FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture  (modified for telephone or other reliable electronic m

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| FUNDS IN THE POSSESSION OF THE SECOND | ) |
| JUDICIAL DISTRICT COURT CLERK PURSUANT | ) |
| TO JUDICIAL ORDER IN CASE D-202-CV-2021-45 | ) |

Case No.   22-MR-1238

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____ New Mexico _____ is subject to forfeiture to the United States of America under _____ 18 _____ U.S.C. § _____ 981(a)(1)(A)* _____ *(describe the property)*:

Funds in the possession of the Second Judicial District Court Clerk in Albuquerque, New Mexico, seized by the New Mexico Attorney General's Office (NMAGO) on or about July 28, 2021, pursuant to judicial order in Case No. D-202-CV-2021-4543, in an amount not to exceed $2,229,499.76.

*These funds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) and (C), and 18 U.S.C. § 982(a)(1).

The application is based on these facts:
See attached affidavit.

❏ Continued on the attached sheet.

_____
*Applicant's signature*

Special Agent John W. Howard, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  August 19, 2022

_____
*Judge's signature*

City and state:  Albuquerque, NM

Magistrate Judge Jerry H. Ritter
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF FUNDS IN THE POSSESSION OF THE SECOND JUDICIAL DISTRICT COURT CLERK PURSUANT TO JUDICIAL ORDER IN CASE D-202-CV-2021-4543 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEIZURE WARRANT**

1.      I, John W. Howard, Special Agent of the Federal Bureau of Investigation (FBI), United

States Department of Justice, Washington, D.C., having been duly sworn, state:

2.      I am a Special Agent (SA) of the FBI, and am currently assigned to the Albuquerque

Division.  I have been a Special Agent with the FBI since 2004 and my primary investigative

responsibilities include white-collar crime, money laundering, and public corruption.  I have

received advanced training in white-collar crime, public corruption, money laundering, and asset

forfeiture.  I am a certified Adjunct Faculty member for the FBI and FBI Academy in asset

forfeiture and money laundering.  The information set forth in this affidavit was derived from my

own investigation and/or communicated to me by other employees of the FBI, agent(s) with the

United States Internal Revenue Service Criminal Investigation (IRSCI) and the United States

Department of Education Office of the Inspector General (ED-OIG) and other law enforcement

agencies, and from records and documents that I, and others, have reviewed.  I have not included

every fact known to me concerning the investigation.  I have set forth only the facts that I believe

are necessary to demonstrate probable cause for the issuance of the requested seizure and

forfeiture warrants.

## INTRODUCTION

3.     I am familiar with the investigation of Sheryl Williams-Stapleton (Stapleton) and Joseph

F. Johnson (Johnson), et al., involving allegations of violations of 18 U.S.C. § 666, Theft or

bribery concerning programs receiving federal funds and 18 U.S.C. § 1956, Laundering of

monetary instruments.

4.     This affidavit is in support of an Application for the issuance of a Seizure Warrant for the

following property:

> **Funds in the possession of the Second Judicial District Court Clerk in
> Albuquerque, New Mexico, seized by the New Mexico Attorney General's
> Office (NMAGO) on or about July 28, 2021, pursuant to judicial order in
> Case No. D-202-CV-2021-4543, in an amount not to exceed $2,229,499.76.**

5.     I have reason to believe that based upon the facts set forth in this affidavit, probable

cause exists for seizure of the property named above for civil and/or criminal forfeiture.  The

property is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes

or is derived from proceeds traceable to violations of 18 U.S.C. § 666(a)(1), or conspiracy to

commit such offenses.  The property is subject to civil forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(A) because it was involved in transactions or attempted transactions in violation of

18 U.S.C. § 1956(a)(1)(B)(i), or is property traceable to such property.  The property is subject to

criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because it

constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 666(a)(1), or

conspiracy to commit such offenses.  The property is subject to criminal forfeiture pursuant to 18

U.S.C. § 982(a)(1) because it was involved in transactions or attempted transactions in violation

of 18 U.S.C. § 1956(a)(1)(B)(i), or is property traceable to such property.

6.      On or about September 14, 2021, your Affiant seized $452,419.56 from the 2nd Judicial

District Court Clerk pursuant to a warrant obtained in case 21-MR-1307.  The probable cause for

the seizure is restated in this affidavit but facts not relevant to this seizure have been removed.

The funds were previously seized by the New Mexico Attorney General's Office (NMAGO)

from three of the accounts identified in this affidavit.  Your Affiant based the seizure total on

court filings from the NMAGO.  Your Affiant was unaware the amounts included in the filings

were approximations causing your Affiant to seize an amount $22,425.82 less than what was

held by the 2nd Judicial District Court Clerk.  Your Affiant included the NMAGO estimates in

forfeiture totals. This affidavit requests an amount not to exceed the total funds minus funds

already seized from the specified accounts.  Your Affiant is requesting a total amount instead of

the $22,425.82 in the event the account the funds are held in is interest bearing.  Any interest

accrued will be credited to the total amount subject to seizure and forfeiture.

7.      Following the seizure of the bulk of the funds pursuant to the previous search warrant,

Johnson and Robotics Management Learning Systems asserted claims to the funds by way of

petition, affidavit, and other filings in 21-cv-01021-JHR-SMV and 22-cv-00183-JHR-GFR.

## CARL D. PERKINS VOCATIONAL AND TECHNICAL EDUCATION ACT

8.      The Carl D. Perkins Vocational and Technical Education Act (Perkins), 20 U.S.C. § 2301

(34 C.F.R. 674), provides federal funding for state and district Career Technical Education

(CTE) programs.  According to the Perkins Act:

> "The purpose of this Act is to develop more fully the academic knowledge and technical and
> employability skills of secondary education students and postsecondary education students
> who elect to enroll in career and technical education programs and programs of study, by—
> (1) building on the efforts of States and localities to develop challenging academic and
> technical standards and to assist students in meeting such standards, including preparation for
> high skill, high wage, or in-demand occupations in current or emerging professions;

(2) promoting the development of services and activities that integrate rigorous and challenging academic and career and technical instruction, and that link secondary education and postsecondary education for participating career and technical education students;

(3) increasing State and local flexibility in providing services and activities designed to develop, implement, and improve career and technical education;

(4) conducting and disseminating national research and disseminating information on best practices that improve career and technical education programs and programs of study, services, and activities;

(5) providing technical assistance that— (A) promotes leadership, initial preparation, and professional development at the State and local levels; and (B) improves the quality of career and technical education teachers, faculty, administrators, and counselors;

(6) supporting partnerships among secondary schools, postsecondary institutions, baccalaureate degree granting institutions, area career and technical education schools, local workforce investment boards, business and industry, and intermediaries;

(7) providing individuals with opportunities throughout their lifetimes to develop, in conjunction with other education and training programs, the knowledge and skills needed to keep the United States competitive; and

(8) increasing the employment opportunities for populations who are chronically unemployed or underemployed, including individuals with disabilities, individuals from economically disadvantaged families, out-of-workforce individuals, youth who are in, or have aged out of, the foster care system, and homeless individuals. "

9.    Perkins funds are a federal grant, and as such, regulated by the Federal Acquisition Regulations (FAR) and the Code of Federal Regulations (CFR).  Various sections of the FAR and CFR regulate activity relevant to this affidavit such as anti-kickback and bribery provisions. Those specific preclusions are covered under the umbrella 2 C.F.R. § 200.318 - general procurement standards:

(a) The non-Federal entity must have and use documented procurement procedures, consistent with State, local, and tribal laws and regulations and the standards of this section, for the acquisition of property or services required under a Federal award or subaward. The non-Federal entity's documented procurement procedures must conform to the procurement standards identified in §§ 200.317 through 200.327.

(b) Non-Federal entities must maintain oversight to ensure that contractors perform in accordance with the terms, conditions, and specifications of their contracts or purchase orders.

(c) (1) The non-Federal entity must maintain written standards of conduct covering conflicts of interest and governing the actions of its employees engaged in the selection, award and administration of contracts. No employee, officer, or agent may participate in the selection, award, or administration of a contract supported by a Federal award if he or she has a real or apparent conflict of interest. Such a conflict of interest would arise when the employee,

officer, or agent, any member of his or her immediate family, his or her partner, or an organization which employs or is about to employ any of the parties indicated herein, has a financial or other interest in or a tangible personal benefit from a firm considered for a contract. The officers, employees, and agents of the non-Federal entity may neither solicit nor accept gratuities, favors, or anything of monetary value from contractors or parties to subcontracts. However, non-Federal entities may set standards for situations in which the financial interest is not substantial, or the gift is an unsolicited item of nominal value. The standards of conduct must provide for disciplinary actions to be applied for violations of such standards by officers, employees, or agents of the non-Federal entity.

(2) If the non-Federal entity has a parent, affiliate, or subsidiary organization that is not a State, local government, or Indian tribe, the non-Federal entity must also maintain written standards of conduct covering organizational conflicts of interest. Organizational conflicts of interest means that because of relationships with a parent company, affiliate, or subsidiary organization, the non-Federal entity is unable or appears to be unable to be impartial in conducting a procurement action involving a related organization.

…..

(h) The non-Federal entity must award contracts only to responsible contractors possessing the ability to perform successfully under the terms and conditions of a proposed procurement. Consideration will be given to such matters as contractor integrity, compliance with public policy, record of past performance, and financial and technical resources. See also § 200.214.

…..

(k) The non-Federal entity alone must be responsible, in accordance with good administrative practice and sound business judgment, for the settlement of all contractual and administrative issues arising out of procurements. These issues include, but are not limited to, source evaluation, protests, disputes, and claims. These standards do not relieve the non-Federal entity of any contractual responsibilities under its contracts. The Federal awarding agency will not substitute its judgment for that of the non-Federal entity unless the matter is primarily a Federal concern. Violations of law will be referred to the local, state, or Federal authority having proper jurisdiction.

10.     The United States Department of Education provides Perkins funding to the New Mexico Public Education Department (NMPED).  NMPED then allocates the funds to the various school districts in NM based on district applications for CTE funding.  On an annual basis, school districts compile their CTE funding requests and then apply to NMPED for program funding. Albuquerque Public Schools (APS) was the largest beneficiary of CTE funds in the state of New Mexico during the period covered in this affidavit.

11.     Stapleton was the Director of the Perkins project and the CTE Coordinator for APS during the timeframe covered in this affidavit.  Stapleton was a State Representative for District 19 in Bernalillo from 1995 until 2021 and served on various committees including the Education Committee.

12.     Stapleton, as the Director of the Perkins project and the CTE Coordinator for APS, is subject to the provisions of the New Mexico Government Conduct Act (GCA) and APS rules of conduct which state that:

> District personnel shall treat their position with Albuquerque Public Schools as a public trust and shall use the powers and resources of their position to advance the public interest and not obtain personal benefits or pursue private interests. District personnel shall conduct themselves in a manner that justifies the confidence placed in them by the people, at all times, maintaining the integrity and discharging ethically the high responsibilities of public service. District personnel shall comply with standards of conduct as outlined in appropriate Board of Education policy, administrative procedural directives and the employee handbook.
> **Financial Interests-** District employees shall disclose all financial interests and shall be aware that substantial interests may affect purchasing and contract agreements with Albuquerque Public Schools. District personnel shall abstain from participation in any decision involving business or real property for which they hold a financial or substantial interest.

13.     The GCA also includes prohibitions for government officials and employees regarding contracting.  In the text of the GCA is an example as to who is covered under the GCA:

> Example 2:
>
> An employee of a state agency works in a bureau that is funded totally with federal grants. Even though the GCA does not apply to federal agencies, all state or local government employees are subject to the GCA regardless of their funding source.

14.     Your affiant believes the Perkins funds that NMPED directed to APS and then to the CTE programs at APS are subject to the FAR, CFR, and GCA, each of which requires contracting to be conducted at arm's length and prohibit kickbacks and bribes.

15.     Robotics Management Learning Systems LLC (RMLS) was a vendor for APS and provided a software program to APS for the CTE program called Cyberquest.

16.     Between at least 2013 and 2019, the US Department of Education (USDOEd) via Perkins funding provided NMPED over $41,000,000 in CTE funding.  From those funds, NMPED provided APS approximately $6,167,297.14 for CTE programs based on the following annual disbursements:

        2013-2014- $975,341.00
        2014-2015- $934,240.00
        2015-2016- $1,069,920.54
        2016-2017- $1,068,165.60
        2017-2018- $1,052,895.00
        2018-2019- $1,066,735.00
        Total- $6,167,297.14

17.     Your affiant has reviewed APS requests to NMPED for Perkins funding.  Two of the disclosures noted on the application are:

        - Perkins funds will not be used to supplant program activities or services being funded with state and local funds.
        - Funds will not be used to acquire equipment (including computer software) that results in direct financial benefit to any organization representing the interest of the purchasing entity or its employees or any affiliate of such organization.

18.     Perkins Grant Funds are categorized as "allowable" and "unallowable" reimbursable expenses.  Included in the "unallowable" expenses as per NMPED materials provided to APS are the following:

        -Contributions or donations
        -Contingency or Petty cash funds
        -Goods or services for personal use
        -Food/Drinks
        -Scholarships
        -Purchase or lease of passenger vehicles including automobiles, trucks, busses, utility vehicles, airplanes, boats, kit-cars, and golf carts (that are not part of the instructional program)

## JOSEPH JOHNSON AND SHERYL WILLIAMS STAPLETON

19.     Johnson agreed to speak with agents on July 28, 2021.  In that interview he provided the

following information: He has known Stapleton for approximately 30-40 years, and they

attended New Mexico State University together.  Their friendship predated her employment with

APS and her election to the New Mexico House of Representatives.  One day, while talking with

Stapleton, Johnson mentioned a software program developed with MIT that would help

underperforming students understand and not be afraid of math.  Stapleton liked the idea and

asked Johnson to show it to her.  Johnson stated that the program was initially purchased by APS

on a sole source basis because they were the only provider and in later years it was purchased

through a Request For Proposal (RFP) to which RMLS responded to.  The RFP was not issued

by Stapleton but was issued via APS's Procurement Department.  Johnson won post Sole Source

contracts via the normal contracting process.

20.      Johnson was asked if he had any financial relationships with Stapleton and he replied in

the negative.  Johnson at one point responded when asked the question again, "there is nothing

coming to her from our company, period." According to Johnson, he was unaware of, and did not

authorize, Stapleton to take any funds from the RMLS account for personal use.

21.     Johnson identified himself as the owner/director of RMLS.

## ROBOTICS MANAGEMENT LEARNING SYSTEMS LLC

22.     RMLS was organized in the District of Columbia on or about August 22, 2005.

According to limited liability company documents, Joseph F. Johnson Jr. was the organizer of

RMLS.  The address provided for Johnson was 2401 Calvert Street, NW, #106, Washington D.C.

RMLS had seven Articles of Incorporation annotated in the filing.  Articles 1 and 2 noted the

name and duration of the Articles.  Article 3 identified the initial registered agent in the District

of Columbia as Patricia Smith and provided an address of 1004 Southern Avenue SE,

Washington D.C, 20032.  Articles 4 and 5 address organization and management. Article 6

articulates the purpose of RMLS. According to the filing:

> "The purpose of the Company shall be (1) to provide educational services, and to deliver
> instruction to individuals from a distance, into their homes and other locations, making
> use of the Internet, software, modems, TV stations, 2-way television using fiber optics,
> and digital phone lines, satellite, videocassette and audiotape; (2) engage in other
> transactions as may be deemed proper by the Board as provided herein, and (3) exercise
> and enjoy all of the powers, rights, and privileges granted or conferred upon limited
> liability companies, as are permissible under the ACT and are not in consistent with the
> foregoing purposes."

23.     Article 7 identified Johnson as the organizer.

24.     A Written Consent To Act As Registered Agent was included in the filing and was signed

by Patricia A. Smith on or about August 22, 2005.

25.     The New Mexico Secretary of State online business portal was queried for RMLS and no

record for RMLS was located.

26.     Internet searches for RMLS and logical derivations of RMLS were conducted and no web

page was found. RMLS performed over $2,000,000 worth of technical/software licensing

contract work for the state of New Mexico but had no discernable web page.

27.     Bank of America account # 435003347636 is held in the name of RMLS and was opened

on or about July 24, 2007.  Records reviewed indicate that Johnson is the member/manager and

is the sole signer on the account.  On April 1, 2013, the account had a balance of $95,755.69.

28.     Between 2013 and 2020, RMLS received the following amounts from APS via the

corresponding number of deposits:

> 2013- $295,500 via 7 deposits
> 2014- $410,000 via 8 deposits
> 2015- $348,000 via 7 deposits
> 2016- $428,000 via 8 deposits
> 2017- $348,000 via 6 deposits

2018- $388,000 via 7 deposits
2019- $266,950 via 1 deposit
2020- $560,000 via 8 deposits
Total- $3,044,450 via 52 deposits

29.     Checks from APS to RMLS were sent to Post Office Box (PO Box) 9323, Albuquerque,

New Mexico to be paid to the order of Robotics Management Learning.

30.     PO Box 9323, Albuquerque, New Mexico was opened on or about March 30, 2012, under

the name Robotics Management LLC by an individual named Kendall Braime who identified

himself as the owner.

31.     When asked why checks to RMLS were sent to a PO Box in Albuquerque instead of his

office in either Washington DC or Virginia, Johnson stated that he used to have a couple of

employees who worked at an office at the fairgrounds in Albuquerque.  They would retrieve

checks and deposit them.  Johnson later closed the office but continued having individuals

retrieve the checks for deposit in Albuquerque.  According to Johnson, Stapleton also retrieved

checks from the PO Box and deposited them in the RMLS account.

32.     As an example, the check below was dated June 14, 2019, and was mailed by APS to the

RMLS Post Office Box.  The check was deposited in the RMLS account on June 18, 2019, at a

Bank of America in Albuquerque.





33.     According to Johnson, RMLS is his business.  Stapleton is not an employee or in any way

affiliated with the business.  Neither Johnson nor RMLS are affiliated with any of Stapleton's

businesses or enterprises.

34.     RMLS received a patent for CyberQuest in 2009 and a certificate with the seal of

copyright in 2015.

35.     According to an APS solicitation [#RFP# 19-032 RMS]:

> "The CyberQuest application was built in 2010 by Robotics Management Learning
> Systems (RMLS) to improve the math grades in the Albuquerque Public School (APS)
> District in New Mexico. CyberQuest is a desktop application which allows students the
> opportunity to improve both Pre-Algebra and Algebra skills. The application is web-
> based and utilizes best practices in mathematics learning environments with synchronous
> and asynchronous features that:
> 1. Aligns the common core standards and the APS curriculum topics
> 2. Provides opportunities to work at an individual student's own pace,
> 3. Includes a variety of management and monitoring tools to document progress and
> pinpoint areas for future improvement, and
> 4. Allows teachers to modify and adapt the learning system to reflect their individual
> classroom needs.

36.     According to the solicitation, RMLS provided the following cost breakdown:



**Albuquerque Public Schools**
**Solicitation # RFP # 19-032 RMS**
**Career Technical Education Mathematics Web Based Learning System**

6.5   APS Estimated Cost

| Section Number | Price Consideration for CyberQuest | | | Total Cost |
|---|---|---|---|---|
| 6.1 | Implementation Cost | | | $  144,000.00 |
| 6.1.a | Teacher Support Implementation Cost (Part-Time-$150*960 Hrs) | | $144,000.00 | |
| | | | | |
| 6.2 | Training Seminars | | | $  68,600.00 |
| 6.2.a | Travel Cost (4 Trips per Year) | | | |
| | *Air Travel (Round Trip @ $600.00)* (4 Trips) | $  2,400.00 | | |
| | *Rental Car ($50.00/day; $250.00/Week)*(4 Trips) | $  1,000.00 | | |
| | *Hotel ($110.00/day; $550.00/Week)*(4 Trips) | $  2,200.00 | | |
| 6.2.b | Seminar Cost | | | |
| | Qtr 1 (One Day at $1500@Day ; $3750 Three Days) | $  3,750.00 | | |
| | Qtr 2 (One Day at $1500@Day ; $3750 Three Days) | $  3,750.00 | | |
| | Qtr 3 (One Day at $1500@Day ; $3750 Three Days) | $  3,750.00 | | |
| | Qtr 4 (One Day at $1500@Day ; $3750 Three Days) | $  3,750.00 | | |
| 6.2.c | Changes After Seminar (Part-Time-$150/hr*80 hrs) | $  48,000.00 | | |
| | | | | |
| 6.3 | License Fee | | $  40,000.00 | $  40,000.00 |
| | | | | |
| 6.4 | Renewal Fee | | | $  105,600.00 |
| 6.4.1 | System Administrator (Part-Time-$80/hr*960 hrs) | $  76,800.00 | | |
| 6.4.2 | Service Desk Support (Part-Time-$30/hr*960 hrs) | $  28,800.00 | | |
| | | | | |
| 6.5 | Estimated Annual Cost | | | $  358,200.00 |
| | | | | |
| | Estimated Six Year Cost | | | $ 2,149,200.00 |

Assumptions:

- 8,000 Students per year (based upon current users)
- School Days - 180 per Calendar Year
- Summer School - 40 Days per Calendar Year
- Quoted Price is valid for 120 days from submission

37.    Included in the solicitation, pursuant to NMSA 1978 13-1-191.1 (2006), is the following

admonition:

"any person seeking to enter into a contract with any state agency or local public body for
professional services, a design and build project delivery system, or the design and
installation of measures the primary purpose of which is to conserve natural resources
must file this form with that state agency or local public body. This form must be filed
even if the contract qualifies as a small purchase or a sole source contract. The
prospective contractor must disclose whether they, a family member or a representative
of the prospective contractor has made a campaign contribution to an applicable public
official of the state or a local public body during the two years prior to the date on which
the contractor submits a proposal or, in the case of a sole source or small purchase
contract, the two years prior to the date the contractor signs the contract, if the aggregate
total of contributions given by the prospective contractor, a family member or a
representative of the prospective contractor to the public official exceeds two hundred

and fifty dollars ($250) over the two year period. Furthermore, the state agency or local public body shall void an executed contract or cancel a solicitation or proposed award for a proposed contract if: 1) a prospective contractor, a family member of the prospective contractor, or a representative of the prospective contractor gives a campaign contribution or other thing of value to an applicable public official or the applicable public official's employees during the pendency of the procurement process or 2) a prospective contractor fails to submit a fully completed disclosure statement pursuant to the law."

38.     For the purpose of this affidavit, the following definitions are included in the solicitation

and disclosure:

> **"Applicable public official"** means a person elected to an office or a person appointed to complete a term of an elected office, who has the authority to award or influence the award of the contract for which the prospective contractor is submitting a competitive sealed proposal or who has the authority to negotiate a sole source or small purchase contract that may be awarded without submission of a sealed competitive proposal.
> **"Campaign Contribution"** means a gift, subscription, loan, advance or deposit of money or other thing of value, including the estimated value of an in-kind contribution, that is made to or received by an applicable public official or any person authorized to raise, collect or expend contributions on that official's behalf for the purpose of electing the official to federal, statewide or local office. "Campaign Contribution" includes the payment of a debt incurred in an election campaign, but does not include the value of services provided without compensation or unreimbursed travel or other personal expenses of individuals who volunteer a portion or all of their time on behalf of a candidate or political committee, nor does it include the administrative or solicitation expenses of a political committee that are paid by an organization that sponsors
> **"Family member"** means spouse, father, mother, child, father-in-law, mother-in-law, daughter in-law or son-in-law.
> **"Pendency of the procurement process"** means the time period commencing with the public notice of the request for proposals and ending with the award of the contract or the cancellation of the request for proposals.
> **"Person"** means any corporation, partnership, individual, joint venture, association or any other private legal entity.
> **"Prospective contractor"** means a person who is subject to the competitive sealed proposal process set forth in the Procurement Code or is not required to submit a competitive sealed proposal because that person qualifies for a sole source or a small purchase contract.
> **"Representative of a prospective contractor"** means an officer or director of a corporation, a member or manager of a limited liability corporation, a partner of a partnership or a trustee of a trust of the prospective contractor.

39.     There is a representation by Johnson, or what appears to be a cut and pasted signature,

that "no contributions in the aggregate total over two hundred fifty dollars ($250) were made to

an applicable public official by me, a family member or representative." It is dated January 23,

2019, and identifies Johnson as the President of RMLS.

40.     The next section of the Solicitation is titled Conflict of Interest and Debarment/

Suspension Certification Form.  The signature for Johnson also appears to be cut and pasted.

The form submitted on behalf of RMLS is contained below:

---

**Albuquerque Public Schools**
**Solicitation # RFP # 19-032 RMS**
**Career Technical Education Mathematics Web Based Learning System**



**7.2   Conflict of Interest and Debarment/Suspension Certification Form**

As utilized herein, the term "Vendor" shall mean that entity submitting a proposal to Albuquerque Public Schools in response to the above referenced request for proposals.

**The authorized Person, Firm and/or Corporation states that to the best of his/her belief and knowledge:** No employee or board member of Albuquerque Public Schools (or close relative), with the exception of the person(s) identified below, has a direct or indirect financial interest in the Vendor or in the proposed transaction. Vendor neither employs, nor is negotiating to employ, any Albuquerque Public Schools employee, board member or close relative, with the exception of the person(s) identified below. Vendor did not participate, directly or indirectly, in the preparation of specifications upon which the quote or offer is made. If the Vendor is a New Mexico State Legislator or if a New Mexico State Legislator holds a controlling interest in Vendor, please identify the legislator: _____ List below the name(s) of any Albuquerque Public Schools employee, board member or close relative who now or within the preceding 12 months (1) works for the Vendor; (2) has an ownership interest in the Vendor (other than as an owner of less than 1% of Vendor's stock, if Vendor is a publicly traded corporation); (3) is a partner, officer, director, trustee or consultant to the Vendor; (4) has received grant, travel, honoraria or other similar support from Vendor; or (5) has a right to receive royalties from the vendor. _____

DEBARMENT/SUSPENSION STATUS

The Vendor certifies that it is not suspended, debarred or ineligible from entering into contracts with the Federal Government, or any State agency or local public body, or in receipt of a notice or proposed debarment from any Federal or State agency or local public body. The vendor agrees to provide immediate notice to Albuquerque Public School's Procurement Department in the event of being suspended, debarred or declared ineligible by any department or agency of the Federal government, or any agency of local public body of the State of New Mexico, or upon receipt of a notice of proposed debarment that is received after the submission of the quote or offer but prior to the award of the purchase order or contract.

CERTIFICATION

The undersigned hereby certifies that he/she has read the above CONFLICT OF INTEREST and DEBARMENT/SUSPENSION status requirements and that he/she understands and will comply with these requirements. The undersigned further certifies that they have the authority to certify compliance for the vendor named and that the information contained in this document is true and accurate to the best of their knowledge.

**Signature:** _____

**Name of Person Signing (typed or printed):**   Joseph Johnson _____

**Title:** President _____   **Date:**   1/23/2019 _____

**Name of Company (typed or printed):** Robotics Management Learning System, LLC _____

**Address:** 1004 Southern Avenue, SE _____

**City/State/Zip:** Washington, DC  20032 _____

**Telephone:** 301-918-8250 (office) / 240-535-3481 (mobile) _____

Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal or quotation.
**24 January 2019**                                                                                           **Page 61**

---

41.     In the filing, Johnson does not identify any APS employee with a direct or indirect

financial interest in RMLS.  The attestation is for the previous 12 months.

42.     When interviewed about the RMLS accounts, Johnson was asked:

| | |
|---|---|
| **Affiant**: | We know Sheryl picks the checks up and takes them to the bank and deposits them… |
| **Johnson**: | Yes. |
| **Affiant**: | And, um, you could say "there was nobody in Albuquerque to deposit the checks, she's a friend, so she agreed to pick the checks up and take them down to the bank to deposit them." I could see that being a situation that you get in to when you live in Virginia, she lives here, you guys are friends…has that been happening? |
| **Johnson**: | That's right, yes. |
| **Affiant**: | I mean, are you aware of Sheryl taking the checks out of the PO Box and depositing them in the bank? |
| **Johnson**: | I am. I asked her to do that and I asked (unintelligible) other people to do it. I'm not sure how much she has done it herself, but I have asked her to do that. Yes. |
| **Affiant**: | Okay. But you are not aware of her receiving any monetary gain from any of the Robotics accounts? |
| **Johnson**: | No I am not. |
| **Affiant**: | Do you do your own bookkeeping, or do you have an accountant? |
| **Johnson**: | I do my own. |

## ROBOTICS MANAGEMENT LEARNING SOLUTIONS AND
## TASTE OF THE CARIBBEAN

43.     Taste of the Caribbean (TOC)/El Sabor De Caribe LLC was incorporated in New Mexico

on or about November 1, 2015, as a Domestic Limited Liability Company.  The organizers are

Sheryl Williams Stapleton and Veronica Williams.  The Registered Agent is identified as

Stapleton and references her physical address as 4616 Crest SE, Albuquerque, NM 87108,

Stapleton's known address.

44.     TOC's principal place of business was located at 2720 Central Avenue SE in

Albuquerque, New Mexico.

45.     According to their website, TOC "has been with Albuquerque for eleven years prior to

their permanent location in the UNM area.  Originally cooking at the Albuquerque Pavilion at

Expo New Mexico on the State Fairgrounds…".

46.     Bank of America, account # 439006443753 was opened for TOC on or about October 23,

2015, with a $4,000 ATM deposit.  The signature card classifies TOC as a "single member Sole

Proprietor" Limited Liability Company. Stapleton is identified as the owner and the sole

signature authority.

47.     When interviewed, Johnson claimed to have no financial interest in TOC.  According to

Johnson he was neither a shareholder nor partner, nor had he ever loaned any money to the

enterprise.

48.     According to records reviewed, between 2015 and 2018, TOC received the following

amounts from RMLS via the corresponding number of deposits:

      2015- $16,485.68 via 2 deposits
      2016- $95,050.00 via 17 deposits
      2017- $98,800.60 via 19 deposits
      2018- $102,787.20 via 18 deposits
      Total $313,123.48 via 56 deposits

49.     When interviewed, Johnson informed your affiant that over the years he had sent

Stapleton approximately three or four blank checks per summer in order to pay for a summer

program RMLS ran for the University of New Mexico.  The total would have been less than

$2,000 for all the teachers.  During the interview, and unprompted, Johnson called Patricia Smith

(Smith) to verify the information.  Smith, unaware that agents were interviewing Johnson,

replied she never sent over 15 checks, the last being in 2020.  Smith stated that most of the time

she signed them but may not have signed checks from 2020.  Stapleton did not send receipts
back.

50.      Johnson was asked if Stapleton had a RMLS checkbook, which Johnson denied.

51.      All 56 deposits noted above were via RMLS checks paid to the order of TOC.

52.      In reviewing the 56 deposited checks, your affiant noted signature discrepancies in the
checks.  When opening the RMLS Bank of America account, Johnson signed his signature three
times, noted below:



53.      Based on a review of the 56 RMLS checks deposited in the TOC account, a few signature
variations are noted:





54.     All RMLS checks deposited in the TOC account were deposited in New Mexico.  RMLS

checks deposited in Virginia, where Johnson resides, were reviewed and the signatures appear

different.



55.     Oftentimes, the deposit of an RMLS check to the TOC account would occur the same day

as, or within a few days of APS making a payment to RMLS.

56.     The memo line for the RMLS checks deposited in the TOC account state things such as

expense, lease payments, fees, insurance, and taxes.

57.     The chart below shows the specific transaction information for the 56 transactions:

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 11/20/15 | 3295 | $ (9,985.68) | RMLS | TOC | contract services |
| 12/4/15 | 3213 | $ (6,500.00) | RMLS | TOC | payment expenses |
| 1/6/16 | 3299 | $ (5,500.00) | RMLS | TOC | Expenses |
| 1/21/16 | 3301 | $ (6,500.00) | RMLS | TOC | materials, supplies, insurance |
| 2/22/16 | 3305 | $ (7,500.00) | RMLS | TOC | Lease payment - (illegible) |
| 3/8/16 | 3309 | $ (6,500.00) | RMLS | TOC | equipment |
| 4/18/16 | 3390 | $ (6,500.00) | RMLS | TOC | equipment |
| 5/4/16 | 3393 | $ (8,500.00) | RMLS | TOC | Lease/Permit City of Alb |
| 5/23/16 | 3398 | $ (5,650.00) | RMLS | TOC | Lease/equipment |
| 6/10/16 | 3400 | $ (6,500.00) | RMLS | TOC | Lease/equipment/fees/ insurance |
| 7/11/16 | 3509 | $ (6,000.00) | RMLS | TOC | Replace #3507, taxes, Insurance Fees, Lease payments |
| 7/25/16 | 3515 | $ (5,250.00) | RMLS | TOC | Taxes, fees, license Registration expenses |
| 8/12/16 | 3510 | $ (5,650.00) | RMLS | TOC | Lease/Contract expenses |
| 9/6/16 | 3519 | $ (4,500.00) | RMLS | TOC | lease equipment payments |
| 9/19/16 | 3521 | $ (5,500.00) | RMLS | TOC | Fees, taxes, leases, insurance |
| 10/13/16 | 3525 | $ (3,500.00) | RMLS | TOC | Lease payment (equipments) |
| 10/31/16 | 3527 | $ (3,500.00) | RMLS | TOC | Lease agreements |
| 12/15/16 | 3517 | $ (5,500.00) | RMLS | TOC | Lease payment & Fees |
| 12/21/16 | 3570 | $ (2,500.00) | RMLS | TOC | insurance/taxes |
| 1/30/17 | 3523 | $ (7,500.00) | RMLS | TOC | leases/taxes/payments GRT |
| 2/7/17 | 3572 | $ (3,000.00) | RMLS | TOC | Lease payments/ expenditures |
| 3/1/17 | 3574 | $ (3,200.00) | RMLS | TOC | |
| 3/13/17 | 3577 | $ (3,500.00) | RMLS | TOC | |
| 3/27/17 | 3578 | $ (5,520.00) | RMLS | TOC | Lease/Fees/Taxes |
| 4/4/17 | 3579 | $ (8,500.00) | RMLS | TOC | leases/taxes/payments |
| 4/21/17 | 3582 | $ (4,500.00) | RMLS | TOC | Lease/taxes |
| 5/5/17 | 3584 | $ (5,350.50) | RMLS | TOC | expenses (illegible) |
| 6/6/17 | 3591 | $ (4,500.00) | RMLS | TOC | lease payment |
| 6/30/17 | 3593 | $ (5,350.00) | RMLS | TOC | Lease/taxes payments |
| 7/17/17 | 3755 | $ (7,500.00) | RMLS | TOC | leases/ taxes/fees |
| 7/27/17 | 3758 | $ (4,500.00) | RMLS | TOC | leases, taxes, licenses |
| 9/1/17 | 3594 | $ (8,500.00) | RMLS | TOC | Lease payments, taxes, expenses |
| 9/13/17 | 3763 | $ (6,500.00) | RMLS | TOC | Lease, taxes, expenses |
| 10/4/17 | 3764 | $ (5,250.00) | RMLS | TOC | Lease expenses |
| 10/20/17 | 2088 | $ (3,500.00) | RMLS | TOC | Lease/taxes fees |
| 11/14/17 | 3769 | $ (2,800.00) | RMLS | TOC | Fees |
| 11/27/17 | 3866 | $ (5,830.10) | RMLS | TOC | Expenses |

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 12/18/17 | 3868 | $ (3,500.00) | RMLS | TOC | Expenses taxes fees |
| 1/10/18 | 3855 | $ (5,200.00) | RMLS | TOC | lease/fees taxes |
| 1/22/18 | 3856 | $ (4,800.00) | RMLS | TOC | taxes/fees |
| 2/20/18 | 3858 | $ (4,500.00) | RMLS | TOC | Lease taxes, fees, expenses |
| 2/27/18 | 3848 | $ (5,000.00) | RMLS | TOC | Expenses |
| 3/15/18 | 3851 | $ (5,650.00) | RMLS | TOC | fees, leases, taxes |
| 3/30/18 | 3865 | $ (5,200.00) | RMLS | TOC | Lease/taxes, fees |
| 4/20/18 | 3860 | $ (5,200.00) | RMLS | TOC | Lease, taxes/fees |
| 5/7/18 | 3850 | $ (8,750.50) | RMLS | TOC | Expenses/Lease/taxes/fees |
| 5/22/18 | 3969 | $ (5,500.00) | RMLS | TOC | |
| 6/6/18 | 3971 | $ (6,500.00) | RMLS | TOC | |
| 7/3/18 | 3847 | $ (8,550.00) | RMLS | TOC | |
| 7/16/18 | 3981 | $ (5,500.00) | RMLS | TOC | |
| 7/27/18 | 3988 | $ (8,500.00) | RMLS | TOC | Taxes, fees |
| 8/24/18 | 3989 | $ (6,500.00) | RMLS | TOC | |
| 9/21/18 | 3991 | $ (6,350.00) | RMLS | TOC | |
| 9/28/18 | 3992 | $ (3,586.70) | RMLS | TOC | |
| 10/24/18 | 4058 | $ (5,000.00) | RMLS | TOC | |
| 11/26/18 | 4061 | $ (2,500.00) | RMLS | TOC | Insurance |

## ROBOTICS MANAGEMENT LEARNING SOLUTIONS AND S. WILLIAMS AND ASSOCIATES

58.     The New Mexico Secretary of State online business portal was queried for S. Williams and Associates (SWA) and no record was found.  Internet queries for SWA and related derivations did not locate anything consistent with Stapleton or an entity under her control.

59.     When interviewed, Johnson claimed he had no business interest or financial relationship with SWA, an entity he was aware of and believed Stapleton used as a consulting business. Neither RMLS nor any entity under Johnson's control is a client of SWA.  Johnson was unaware of any of SWA's clients.

60.     Bank of America Account # 439001030857 was opened on or about March 13, 2008.

The original signature card identifies Stapleton as the sole proprietor/owner and utilizes an SSN

as the tax identification number of SWA.  Stapleton identifies the number as an SSN but the SSN

does not belong to Stapleton.  Additional database checks revealed it was the Employer

Identification Number for SWA.  On or about March 23, 2009, Veronica Williams (Williams)

was added as a signer with Stapleton, who remained the sole proprietor/owner.  The balance on

April 1, 2013. was $35.10.

61.     According to records reviewed between 2014 and 2018, SWA received the following

amounts from RMLS via the corresponding number of deposits:

    2014- $22,500.00 via 6 deposits
    2015- $107,735.90 via 18 deposits
    2016- $55,795.00 via 14 deposits
    2017- $47,561.20 via 10 deposits
    2018- $53,180.10 via 12 deposits
    Total $286,772.20 via 60 deposits

62.     All 60 deposits were via RMLS checks paid to the order of SWA and deposited into the

account noted above.

63.     In reviewing the checks, your affiant identified the same signature pattern as identified on

the TOC checks:





64.     Several of the RMLS checks deposited in the SWA account noted in the memo line

expenses, contract services, fees.

65.     The chart below shows the specific transaction information for the 60 transactions:

| Post Date | Check # | Debit | Payor | Payee | Memo |
|-----------|---------|-------|-------|-------|------|
| 5/7/14 | #2273 | $ (3,500.00) | RMLS | SWA | Expense Reimbursement |
| 5/20/14 | #2279 | $ (3,500.00) | RMLS | SWA | expenses |
| 7/25/14 | #2295 | $ (3,500.00) | RMLS | SWA | contract services |
| 9/26/14 | #2369 | $ (3,500.00) | RMLS | SWA | contract services |
| 12/8/14 | #2342 | $ (3,500.00) | RMLS | SWA | contract services |
| 12/19/14 | #2368 | $ (5,000.00) | RMLS | SWA | contract services |
| 2/2/15 | #2373 | $ (3,500.00) | RMLS | SWA | contract services |
| 2/23/15 | #2376 | $ (2,500.00) | RMLS | SWA | contract services |
| 3/24/15 | #2559 | $ (2,500.00) | RMLS | SWA | contract services |
| 4/20/15 | #2380 | $ (5,000.00) | RMLS | SWA | contract services |
| 5/20/15 | #2565 | $ (5,000.00) | RMLS | SWA | Expenses/contract services |
| 6/3/15 | #2563 | $ (5,500.00) | RMLS | SWA | contract services/expenses |
| 6/15/15 | #2568 | $ (3,500.00) | RMLS | SWA | contract services (illegible) |
| 7/13/15 | #3188 | $ (3,500.00) | RMLS | SWA | contract services |
| 7/23/15 | #3198 | $ (6,500.00) | RMLS | SWA | contract services |
| 9/8/15 | #3199 | $ (6,500.00) | RMLS | SWA | contract services |
| 9/28/15 | #3205 | $ (6,000.00) | RMLS | SWA | contract services |
| 10/8/15 | #3208 | $ (8,500.00) | RMLS | SWA | contract services/ expenses |
| 10/30/15 | #3209 | $ (8,750.00) | RMLS | SWA | program/contract services |
| 11/6/15 | #3291 | $ (9,200.00) | RMLS | SWA | Equipment expenses/Program |
| 11/16/15 | #3294 | $ (9,785.90) | RMLS | SWA | contract services |
| 11/20/15 | #3296 | $ (8,500.00) | RMLS | SWA | equipment, insurance, expenses |
| 12/18/15 | #3214 | $ (6,500.00) | RMLS | SWA | contract services |
| 12/30/15 | #3298 | $ (6,500.00) | RMLS | SWA | contract services |
| 2/12/16 | #3304 | $ (5,500.00) | RMLS | SWA | contract services |
| 3/8/16 | #3310 | $ (5,000.00) | RMLS | SWA | contract services |
| 4/4/16 | #3389 | $ (6,250.00) | RMLS | SWA | contract services |

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 4/18/16 | #3391 | $ (5,455.00) | RMLS | SWA | contract services |
| 5/12/16 | #3396 | $ (6,500.00) | RMLS | SWA | |
| 6/10/16 | #3401 | $ (5,250.00) | RMLS | SWA | contract services |
| 7/1/16 | #3408 | $ (3,560.00) | RMLS | SWA | contract services |
| 7/25/16 | #3516 | $ (3,500.00) | RMLS | SWA | contract services |
| 9/6/16 | #3520 | $ (2,500.00) | RMLS | SWA | |
| 9/19/16 | #3522 | $ (3,580.00) | RMLS | SWA | Contract Services |
| 10/13/16 | #3524 | $ (1,200.00) | RMLS | SWA | Supply expenses, (illegible) snacks transportation |
| 10/31/16 | #3528 | $ (1,000.00) | RMLS | SWA | contract services |
| 11/9/16 | #3529 | $ (3,000.00) | RMLS | SWA | contract services |
| 12/21/16 | #3569 | $ (3,500.00) | RMLS | SWA | contract services |
| 1/30/17 | #3571 | $ (5,000.00) | RMLS | SWA | |
| 3/13/17 | #3575 | $ (7,550.00) | RMLS | SWA | contractual services/fees/taxes leans |
| 4/7/17 | #3581 | $ (6,577.60) | RMLS | SWA | contract services-transportation taxes fees |
| 5/5/17 | #3586 | $ (5,000.00) | RMLS | SWA | |
| 6/26/17 | #3592 | $ (4,500.00) | RMLS | SWA | contract services |
| 7/17/17 | #3757 | $ (3,850.00) | RMLS | SWA | contract services |
| 9/1/17 | #3595 | $ (5,583.60) | RMLS | SWA | contract services |
| 10/4/17 | #3765 | $ (6,500.00) | RMLS | SWA | |
| 11/27/17 | #3867 | $ (1,500.00) | RMLS | SWA | |
| 12/18/17 | #3864 | $ (1,500.00) | RMLS | SWA | |
| 1/10/18 | #3854 | $ (3,850.00) | RMLS | SWA | Expenses |
| 2/20/18 | #3857 | $ (3,550.00) | RMLS | SWA | |
| 3/15/18 | #3853 | $ (5,000.00) | RMLS | SWA | expenses |
| 3/30/18 | #3846 | $ (2,500.00) | RMLS | SWA | expenses |
| 4/20/18 | #3862 | $ (3,000.00) | RMLS | SWA | |
| 5/7/18 | #3967 | $ (3,500.00) | RMLS | SWA | |
| 5/22/18 | #3968 | $ (3,500.00) | RMLS | SWA | |
| 6/12/18 | #3972 | $ (7,250.00) | RMLS | SWA | |
| 6/29/18 | #3973 | $ (5,300.00) | RMLS | SWA | |
| 7/27/18 | #3983 | $ (5,000.00) | RMLS | SWA | |
| 8/27/18 | #3990 | $ (5,530.10) | RMLS | SWA | |
| 10/1/18 | #3993 | $ (5,200.00) | RMLS | SWA | |

## THE UJIMA FOUNDATION/CHARLIE MORRISEY

66.    The Ujima Foundation (UF) was incorporated in New Mexico on or about November 8,

1996, as a Domestic Nonprofit Corporation.  According to a review of the New Mexico

Secretary of State Corporations and Business Services website, UF is still active and in good standing.

67.     The stated business purpose of UF is to:

> "PROMOTE ISSUES OF YOUTH, HEALTH AND EDUCATION"

68.     The Character of Affairs is:

> "To promote educational, social and economic issues.  Provides for scholarships to high school and college students."

69.     The principal place of business address provided for UF is 4616 Crest SE, Albuquerque, NM 87108 which is the known residence of Stapleton.

70.     The Registered Agent for UF is Sheryl Williams Stapleton and the appointment date is on or about November 8, 1996.

71.     Company Officer information identified the President as Joseph Johnson with an address of PO Box 25385, Albuquerque, New Mexico 87125.  The Vice President is Patricia Smith with an address of PO Box 25385, Albuquerque, New Mexico 87125.  Sheryl Williams Stapleton is identified as the Secretary and Treasurer.

72.     PO Box 25385, Albuquerque, New Mexico 871125 was opened at the Albuquerque Main Post Office in the name of Educational Development by Sheryl Williams Stapleton on or about November 11, 2003.

73.     According to database checks, UF is a 501(c)(3) charitable organization as of the date of this Affidavit.

74.     On or about April 28, 2009, Stapleton opened a Bank of America account, # 004278437924 with the title UJIMA Foundation/Charlie Morrisey (UCM).  The name of the corporation was UF.  The tax ID used to open the Bank of America account for UF is identical to

the tax ID reviewed in public Form 990-EZ filings of 85-0446320.  The balance in the account

on April 1, 2013, was $2,697.60.

75.      When interviewed, Johnson claimed he was aware of the UCM and that it was a charity

run by Stapleton that awarded scholarships.  Johnson stated he made donations over the years

which would have totaled approximately $10,000.  Johnson claimed that was the extent of his

knowledge of the entity.  Johnson claimed to have no knowledge or involvement in the entity

outside the donations.  When asked if he was aware of over $400,000 in RMLS funds being

moved into the UF account, Johnson claimed to have no knowledge and stated that he was not

only unaware of it but did not and would not have approved it.

76.      According to records reviewed, Johnson is listed as the President of UF and is a signer on

the account with Stapleton as per below:

**Bank of America** 🇺🇸

BANK OF AMERICA, N.A. (THE "BANK")                    Corporate
                                                      Signature Card

Account Number _004274837924_
Account Type _BUSINESS ECONOMY CHKG_
Account Title _UJIMA FOUNDATION/CHARLIE MORRISEY_      ☐ Temporary Signature Card

Name of Corporation _UJIMA FOUNDATION_
Tax Identification Number _850446320_

By signing below, the above named Corporation agrees that this account is and shall be governed by the terms and conditions set forth in the following documents, as amended from time to time: (1) the Deposit Agreement and Disclosures, (2) the Business Schedule of Fees, (3) the Miscellaneous Fees for Business Accounts and the Corporation further acknowledges the receipt of these documents.

Substitute Form W-9. Certification Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien).

Certification Instructions
You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. (See also IRS Instructions for Form W-9.)

☑ Exempt (check if applicable)

| | The Internal Revenue Service does not require your consent to any provision at this document other than the certifications required to avoid backup withholding. |
|---|---|

Name (Typed or printed)         Title              Signature
1. _SHERYL WILLIAMS-STAPLETON_   _CEO_              _[signature]_
2. _JOE JOHNSON_                 _PRESIDENT_        _[signature]_
3.
4.
5.

I, the undersigned, hereby certify that I am the Secretary or Assistant Secretary of the Corporation named above, (2) the above named personal are those person(s) currently empowered to act under the Corporate resolutions authorizing this account and the other banking services provided therein, (2) that the title and specimen signature set forth opposite the name of each person are true and genuine, and (4) the Substitute Form W-9 certification.

This _28_ day of _April, 2009_                        _[signature]_
                                                      Secretary/Assistant Secretary

**ATM/Deposit/Check Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Check Cards, I am authorized by the resolutions which authorize this account(s) hereby request the issuance of such cards to any of the authorized signers on this account.

_[signature]_                                          _CEO_ _[signature]_
Primary ID Type _NMDL_                                 Primary ID Type _NM DL_
Issue Date _08/16/07_  Exp Date _08/16/11_            Issue Date _10/06_  Exp Date _2/16/11_
2nd ID Type _BAC  (except fast 4 digit)_ _3363_       2nd ID Type
Issue Date _N/A_  Exp Date _09/08/11_                 Issue Date _2/06_  Exp Date _2/16/11_
D.O.B. (Partnerships only) _04/16/ OC_                D.O.B. (Partnerships only)
Address (Partnerships only)                           Address (Partnerships only)
_SHERYL  WILLIAMS - STAPLETON_  _2103_                 _JOE  JOHNSON_

**Bank Information**

Date _04/28/2009_                    Banking Center Name _GIBSON_
Associate's Phone Number _____       Associate's Name _____

77.     According to records reviewed, between 2013 and 2019, UCM received the following

amounts from RMLS via the corresponding number of deposits:

      2013- $74,920.00 via 20 deposits
      2014- $77,355.00 via 23 deposits
      2015- $106,535.00 via 19 deposits
      2016- $38,950.00 via 8 deposits
      2017- $57,565.20 via 12 deposits
      2018- $58,835.66 via 12 deposits
      2019- $3,500.00 via 2 deposits
      Total $417,660.86 via 96 deposits

78.    The chart below shows the specific transaction information for the 96 transactions:

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 4/4/13 | 1948 | $ (1,500.00) | RMLS | CM | Program Expenses |
| 4/18/13 | 1950 | $ (4,200.00) | RMLS | CM | Program Expenses |
| 5/6/13 | 1952 | $ (2,500.00) | RMLS | UF | Program Expenses |
| 5/14/13 | 1953 | $ (5,000.00) | RMLS | CM | Program Expenses |
| 5/21/13 | 1976 | $ (4,500.00) | RMLS | CM | program/expenses |
| 5/29/13 | 2004 | $ (750.00) | RMLS | UF | golf (illegible) |
| 6/10/13 | 1977 | $ (1,500.00) | RMLS | UF | Gas, snacks, supplies |
| 6/14/13 | 1980 | $ (5,500.00) | RMLS | CM | program services |
| 6/21/13 | 1981 | $ (5,200.00) | RMLS | UF | program services/expenses |
| 6/26/13 | 1983 | $ (4,820.00) | RMLS | CM | payroll/expenses |
| 7/12/13 | 1989 | $ (5,500.00) | RMLS | CM | program expenses/payroll/transportation |
| 7/23/13 | 1990 | $ (5,500.00) | RMLS | CM | program services/expenses |
| 8/19/13 | 1994 | $ (1,500.00) | RMLS | UF | Transportation/taxes |
| 9/27/13 | 1995 | $ (1,200.00) | RMLS | CM | payroll/transportation |
| 10/3/13 | 2093 | $ (2,500.00) | RMLS | CM | |
| 10/25/13 | 2121 | $ (5,000.00) | RMLS | CM | Program, Services Transportation |
| 11/8/13 | 2124 | $ (5,250.00) | RMLS | UF | Program, Resources, Supplies, Transportation |
| 12/3/13 | 2129 | $ (5,500.00) | RMLS | CM | program, services, expenses, taxes |
| 12/20/13 | 2133 | $ (2,000.00) | RMLS | CM | (illegible) trip expenses car rental (illegible) hotel, ticket |
| 12/31/13 | 2134 | $ (5,500.00) | RMLS | CM | Insurance, taxes, Program Expenses |
| 1/6/14 | 2136 | $ (600.00) | RMLS | UF | payroll |
| 1/27/14 | 2137 | $ (2,500.00) | RMLS | CM | Transportation, payroll, snacks |
| 2/3/14 | 2140 | $ (1,500.00) | RMLS | UF | Transportation, Insurance |
| 2/18/14 | 2202 | $ (750.00) | RMLS | CM | payroll, snacks, gas |
| 2/18/14 | 2206 | $ (2,000.00) | RMLS | CM | Program, Services Transportation |
| 3/3/14 | 2207 | $ (5,600.00) | RMLS | UF | program, snacks, gas, transportation, payroll |
| 3/24/14 | 1145 | $ (2,500.00) | RMLS | UF | Transportation, (illegible) expenses |
| 4/7/14 | 2218 | $ (5,800.00) | RMLS | UF | program, services, gas/snack |
| 4/17/14 | 2212 | $ (3,500.00) | RMLS | CM | program expenses |

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 5/1/14 | 2221 | $ (4,500.00) | RMLS | CM | program, services transportation Insurance |
| 5/7/14 | 2274 | $ (6,800.00) | RMLS | UF | payroll, program expenses |
| 5/20/14 | 2280 | $ (1,500.00) | RMLS | CM | program services/transportation |
| 6/3/14 | 2281 | $ (4,000.00) | RMLS | CM | (illegible), tickets, gas, hotel, meals |
| 6/23/14 | 2285 | $ (5,500.00) | RMLS | UF | payroll, Insurance, Transportation, taxes |
| 7/3/14 | 2291 | $ (1,500.00) | RMLS | CM | payroll, transportation |
| 7/25/14 | 2296 | $ (6,500.00) | RMLS | UF | program, transportation suply expenses |
| 8/19/14 | 2300 | $ (1,800.00) | RMLS | UF | Transportation/program services |
| 9/26/14 | 2370 | $ (2,000.00) | RMLS | UF | contribution - Golf tournament |
| 10/6/14 | 2432 | $ (1,500.00) | RMLS | UF | |
| 11/3/14 | 2339 | $ (5,005.00) | RMLS | CM | Expenses, Taxes, Payroll |
| 11/17/14 | 2340 | $ (1,500.00) | RMLS | UF | payroll, snack, gas |
| 12/8/14 | 2343 | $ (5,500.00) | RMLS | CM | contract, payment, transportation supplies |
| 12/16/14 | 2344 | $ (5,000.00) | RMLS | UF | program expenses |
| 2/2/15 | 2374 | $ (5,000.00) | RMLS | UF | program expenses transportation gas supplies snacks |
| 2/23/15 | 2375 | $ (3,000.00) | RMLS | CM | Transportation, supplies, snacks, program |
| 3/24/15 | 2558 | $ (3,000.00) | RMLS | CM | program expenses transportation snacks |
| 4/20/15 | 2378 | $ (5,500.00) | RMLS | UF | Program Expenses & Transportation |
| 4/24/15 | 2560 | $ (5,000.00) | RMLS | CM | program contract services insurance transportation |
| 6/3/15 | 2562 | $ (5,000.00) | RMLS | CM | summer program, books, materials (illegible) |
| 6/15/15 | 2566 | $ (5,000.00) | RMLS | CM | program, transportation, insurance, supplies |
| 7/13/15 | 2572 | $ (5,000.00) | RMLS | CM | program expenses |
| 7/13/15 | 3189 | $ (5,000.00) | RMLS | UF | Expenditures, transportation, payroll, snacks/program services |
| 7/22/15 | 3194 | $ (5,500.00) | RMLS | UF | program services |
| 8/11/15 | 3201 | $ (5,200.00) | RMLS | CM | program services/expenses |
| 9/28/15 | 3203 | $ (7,500.00) | RMLS | CM | contract services/transportation |
| 9/28/15 | 3204 | $ (6,500.00) | RMLS | UF | supplies, program expenses |

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 10/21/15 | 3290 | $ (7,500.00) | RMLS | CM | program expenses, transportation, snacks |
| 10/30/15 | 3210 | $ (6,500.00) | RMLS | CM | program services |
| 10/30/15 | 3211 | $ (5,800.00) | RMLS | UF | transportation, gas, taxes, Insurance, contract services |
| 11/16/15 | 3292 | $ (6,750.00) | RMLS | UF | materials & expenses |
| 11/16/15 | 3293 | $ (8,785.00) | RMLS | CM | program development |
| 11/20/15 | 3297 | $ (5,000.00) | RMLS | CM | Program expenses- gas/snacks transportation |
| 1/6/16 | 3300 | $ (4,500.00) | RMLS | CM | Taxes/transportation/snacks/ payroll |
| 2/22/16 | 3306 | $ (5,000.00) | RMLS | UF | Contractual Services/Transportation/Insurance Snacks |
| 3/8/16 | 3308 | $ (3,500.00) | RMLS | CM | program services |
| 3/28/16 | 3312 | $ (5,700.00) | RMLS | CM | program expenses, transportation/snacks |
| 4/4/16 | 3313 | $ (5,500.00) | RMLS | UF | program services/snacks payroll/transportation |
| 5/12/16 | 3395 | $ (5,250.00) | RMLS | CM | program services, Transportation/ taxes |
| 6/23/16 | 3406 | $ (4,500.00) | RMLS | CM | Insurance/Transportation/snacks/ payroll |
| 6/23/16 | 3405 | $ (5,000.00) | RMLS | UF | program expenses/Fees |
| 3/13/17 | 3576 | $ (5,350.00) | RMLS | UF | program expenses |
| 4/4/17 | 3580 | $ (5,750.00) | RMLS | CM | contract services |
| 5/5/17 | 3585 | $ (6,000.00) | RMLS | CM | contract services |
| 5/24/17 | 3583 | $ (5,800.00) | RMLS | CM | expenses, program/contract services |
| 6/6/17 | 3589 | $ (5,600.00) | RMLS | CM | Contract services |
| 6/6/17 | 3590 | $ (4,500.00) | RMLS | UF | Expenditure |
| 7/17/17 | 3756 | $ (5,985.10) | RMLS | UF | Program expenses/Transportation |
| 7/27/17 | 3762 | $ (3,500.00) | RMLS | CM | expenses |
| 10/4/17 | 3766 | $ (3,500.00) | RMLS | CM | Program Services |
| 10/20/17 | 2087 | $ (4,750.00) | RMLS | CM | program expenses |
| 11/14/17 | 3768 | $ (3,580.10) | RMLS | CM | Taxes, lease/Fees |
| 12/18/17 | 3863 | $ (3,250.00) | RMLS | CM | program expenses |
| 1/22/18 | 3845 | $ (3,850.00) | RMLS | CM | |
| 2/20/18 | 3859 | $ (5,000.00) | RMLS | CM | |
| 2/27/18 | 3849 | $ (2,850.00) | RMLS | UF | |

| Post Date | Check # | Debit | Payor | Payee | Memo |
|---|---|---|---|---|---|
| 3/15/18 | 3852 | $ (8,385.50) | RMLS | CM | Expenses, program supplies |
| 4/20/18 | 3861 | $ (4,000.00) | RMLS | UF | program expenses |
| 5/7/18 | 3965 | $ (6,000.00) | RMLS | UF | |
| 5/7/18 | 3966 | $ (5,250.00) | RMLS | CM | |
| 5/31/18 | 3970 | $ (4,850.16) | RMLS | CM | expenses |
| 7/16/18 | 3982 | $ (4,500.00) | RMLS | CM | |
| 7/27/18 | 3984 | $ (4,350.00) | RMLS | UF | |
| 7/27/18 | 3985 | $ (5,000.00) | RMLS | CM | Program expenses |
| 10/1/18 | 3994 | $ (4,800.00) | RMLS | CM | |
| 2/25/19 | 4062 | $ (2,000.00) | RMLS | UF | |
| 9/9/19 | 4071 | $ (1,500.00) | RMLS | UF | |

79.     Between April 1, 2013, and May 31, 2020, approximately $201,084 was withdrawn from the UCM account at either ATMs or branches in cash.

## UJIMA FOUNDATION

80.     On or about October 14, 2015, Stapleton opened Bank of America account # 439006443724 in the name of UJIMA Foundation (UF).  Stapleton is the sole signer on this account and is listed as the Chairman of the Non-profit Corporation.  The Employer Identification Number for UF is noted as 85-0446320 which is identical to that of UCM.  The account was initially opened with a $100 deposit from the UCM account via an account transfer on or about October 14, 2015.  On or about December 8, 2015, a teller transfer occurred whereby $30,000 was transferred from the UCM account to the UF account.

81.     According to records reviewed, between 2016 and 2020, UF received the following amounts from RMLS via the corresponding number of deposits:

        2016- $5,500 via 1 deposit
        2020- $48,800 via 7 deposits
        Total $54,300.00 via 8 deposits

82.     Between October 14, 2015, and March 21, 2021, $32,158.60 was transferred to the UCM account from the UF:

> 10/14/2015- $100.00
> 12/8/2015- $30,000.00
> 3/13/2017- $1,000.00
> 5/18/2020- $1,058.60
> Total- $32,158.60

83.     Due to the funds moving from RMLS to UCM to UF, those funds are not being double counted and as such the forfeiture for the UF account does not count the funds twice. Only the funds from RMLS to UF are being sought. The funds from RMLS to UCM to UF are already accounted for in the UCM forfeiture total.

### FUNDS SEIZED BY THE NEW MEXICO ATTORNEY GENERAL'S OFFICE IN THE POSSESSION OF THE SECOND JUDICIAL DISTRICT COURT CLERK

84.     NMAGO has been investigating whether Stapleton committed state crimes associated with the funds described in this Affidavit. On or about July 28, 2021, NMAGO seized $474,845.38 from accounts belonging to RMLS, UCM, and SWA. Based on a review of court filings by the NMAGO, your Affiant requested seizure in the amount of $452,419.56 from the 2nd Judicial District Court Clerk. The restated purpose of this affidavit is to seize the remaining $22,425.82 plus any accrued interest. The probable cause regarding those funds is contained in the preceding paragraphs regarding each entity.

85.     NMAGO seized the funds pursuant to a state judicial order entitled "Order Regarding State of New Mexico's Ex Parte Motion to Seize Criminal Proceeds served on Bank of America" (the Order). The Order directed Bank of America to contact the Second Judicial District Court Clerk for instructions and to deposit the funds in the Court's interest-bearing financial account.

86.     The specific statutory and factual grounds for the seizure of the currency are set forth in the State of New Mexico's Ex Parte Motion to Seize Criminal Proceeds, case # D-202-CV-2021-

4543, filed July 28, 2021.  Your affiant has read the documents and attests that the conduct

alleged therein is by and large the same conduct described in this Affidavit.

87.     The FBI seeks to seize those funds from the Second Judicial District Court Clerk due to

the original source of the funds being the U.S. Department of Education via Perkins Grant

funding.  It is the position of your affiant that the victim in this matter is the U.S. Department of

Education because the funds originated as a federal grant.

### SOLE SOURCE PROCUREMENT

88.     On or about December 4, 2017, a Sole Source/ Emergency Procurement requirement was

posted to the APS procurement website.  The description of the product or service was:

> "Renewal Web Based Educational Curriculum: Math/Science Integration
> Software for Career Tech Ed Classes."

89.     The Department was noted as Career Technical Education and the supplier name was

Robotics Management Learning System.  The quantity was "TBD".

| | | | | | |
|---|---|---|---|---|---|
| | behaviors | | | | |
| 2018-044 < https://www.aps.edu/pro-curement/sole-source-emergency-procurements/2018-044> | Dec 04, 2017 | Renewal Web Based Educational Curriculum: Math/Science Integration Software for Career Tech Ed Classes | Career Technical Education | Robotics Management Learning System | T B D | г B D |

90.     Sole Source Justification Request Form # 2018-044 was reviewed.  The requestor was

Sheryl Williams for the Career Technical Education Department.  The vendor requested was

Robotics Management Learning Systems.  The quantity was noted as "TBD" and the term was to

expire on June 30, 2020.  Stapleton signed the Sole Source Justification Award:

**ALBUQUERQUE PUBLIC SCHOOLS**

**Sole Source Justification Request Form**
Please Print

Document #: 2018-044
Routing:
_____@aps.edu
Phone 878-6126
Fax 830-1161

**Determination:** A sole source *determination* is not effective until the *sole source request for determination* has been posted for thirty (30) calendar days without challenge, and subsequently approved and signed by the Executive Director of Purchasing. Posting period may not apply to requests using Federal Funds

**Term:** Award of Sole Source Procurement Contract will stay on file for the term of the contract. Renewal of Sole Source Procurement must be re-submitted for new term.

---

**SECTION 1:  Requestor Information**

Requisition number (if applicable) _____   School/Department  Career Technical Education

Requested By: Name  Sheryl Williams _____   Email _____

**SECTION 2:  Request for Details - Please provide Buyer the vendor quote and/or proposal.**

Proposed Vendor Name  Robotics Management Learning System _____   Estimated Cost  TBD

Estimated Quantity  TBD _____   Term  June 30, 2020 _____

**SECTION 3:  Description of Goods/Service to be procured** (For descriptions and explanation fields, please use and attach additional pages as needed)

Renewal of web based educational curriculum used in math and science integration software for career technical education classes

**SECTION 4:  Description of unique specifications, exclusive, one of a kind characteristic of commodity/service.** Focus on what is unique about the goods/services and why no other vendor could meet your needs.

Interactive and animated program built in management tool that allows instructors to monitor student progress with coding applications associated with all vocational education classes.

**SECTION 5:  Sole Source Consideration** (Check applicable considerations)

☑ Vendor is the sole manufacturer and sole distributor. (Attach applicable documents)

☐ Exclusive Design:  Item or service possesses a unique function or capability critical in the use of the item or service and not available from any other sources. (Attach explanation)

☐ Replacement or Compatibility of Existing Equipment  The purchase is for equipment associated with use of existing equipment where compatibility is essential for the integrity of results. (Provide manufacturer and model number of existing equipment)

☐ Federal or state appropriation names vendor as condition of funding.  (Attach copy of Grant that names vendor.)

☐ Renewal of support/maintenance/subscription of software, licenses, technology, or other intellectual property. (Attach explanation)

☐ Other (Attach explanation)

**\*\*\*Additional considerations for federal funds use only\*\*\***

☐ Purchase of books, periodicals, and teacher/staff training materials is printed or electronic format from the publishers or copyright holders thereof.

☐ Teacher/Staff Professional Development Training/Workshops/Registration/etc.

☐ Conference Registration & Memberships

☐ Travel, meals & lodging

☐ Other (Attach explanation)

Signature  *Sheryl Williams* _____   Date  12/4/17

---

91.     According to the APS Sole Source/Emergency Procurement rules, a Sole Source

purchase can be made if there is no competition.  Sole Source purchases are made in accordance

with NMSA 1978, § 13-1-126, Sole Source procurement.  According to the statute:

> "A contract may be awarded without competitive sealed bids or competitive sealed
> proposals regardless of the estimated cost when the state purchasing agent or a central
> purchasing office makes a determination, after conducting a good-faith review of
> available sources and consulting the using agency, that there is only one source for the
> required service, construction or item of tangible personal property.  The state purchasing
> agent or a central purchasing office shall conduct negotiations, as appropriate, as to price,
> delivery and quantity in order to obtain the price most advantageous to the state agency
> or a local public body.  A contract for the purchase of research consultant services by
> institutions of higher learning constitutes a sole source procurement."

## SUMMARY

92.     In the time period covered in this affidavit, RMLS received approximately $3,044,450.00 in federal Perkins funds.  Despite being the owner/director of RMLS, Johnson stated he was unaware that Stapleton received money from any RMLS account.  During the time period covered, approximately $1,071,856.54 was paid to accounts controlled by Stapleton from the RMLS account.  Approximately 35% of the proceeds paid to RMLS by APS was deposited into at least four accounts controlled by Stapleton.

## FORFEITURE

93.     Funds in the possession of the Second Judicial District Court Clerk in Albuquerque, New Mexico in an amount not to exceed $2,229,499.76, seized pursuant to judicial order in Case No. D-202-CV-2021-4543.  Your affiant believes probable cause exists for the seizure of these funds because they are subject to civil and/or criminal forfeiture.  The property is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 666(a)(1), or conspiracy to commit such offenses.  The property is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or is property traceable to such property.  The property is subject to criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because it constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 666(a)(1), or conspiracy to commit such offenses. The property is subject to criminal forfeiture pursuant to 18 U.S.C. § 982(a)(1) because it was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or is property traceable to such property.

The affiant states that the above statements are true and correct to the best of his knowledge, information, and belief.

Special Agent John W. Howard
Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN before me via telephone this __19__ day of August, 2022.

The Honorable Jerry H. Ritter
Magistrate Judge, United States District Court